Council, I'm Greg Damman. I'm caring for the appellant, Rodney Mazzulla. The first issue I'd like to address today relates to the search warrants that were issued. There were two of those that were issued in April of 2017, with particularly with regard to the first search warrant, the April 2nd search warrant. At that time, my client was not under investigation for, at least not active investigation, for any kind of illegal drug activity. The investigation related to Shondell Burke and a gentleman by the name of Troy Utley, who had been encountered that evening by investigator Grotz. And through conversations with Mr. Utley, the investigator determined that Utley was selling methamphetamine from Burke, and Burke was being supplied by somebody by the name of Rod. And then at that point, the bell rang with the investigator, and the name Rod triggered a search warrant. And in 2015, about a year and a half ago, or over a year ago prior to that, he had had an encounter with Rodney Mazzulla related to illegal drug activity. The officer prepared the affidavit, submitted it to the magistrate, said basically those facts added in that someone by the name of Scove, Richard Scove, had left the garage, and it was a garage, not a residence that the search warrant was for, and had thrown something on the ground, and it was a small amount of methamphetamine. But he did not say he obtained that at the garage, and in fact said that he didn't know how much methamphetamine was in the garage. Our position is that the affidavit was insufficient because it didn't establish a nexus or a connection between illegal drug activity or the existence of contraband in that garage. The best that could be said was that there was someone, Mr. Mazzulla, who over a year prior had been involved in illegal drug activity who was living there, and that apparently Mr. Utley, who was an informant of unknown reliability, he was not stated to be a reliable informant, that he had said that this was where my source, the source for my source, lives with Burke. So basically I think the question is if someone is thought to be a drug dealer and law enforcement knows where this person lives, is that enough information then to go and get a warrant and search the person's residence? Well, one fellow, is it Scove? He was leaving that garage slash residence and had meth, right? Correct. And did he say he got it from that location? No. He said, apparently he was asked the question, how much methamphetamine was in the garage? And the affidavit, basically the response is given, it states Scove said that he didn't know how much methamphetamine was in the garage. I think any investigator worth his salt under those circumstances, and if I'm the reviewing magistrate, I expect this question would have been asked, but you know, the logical question is, did you get this methamphetamine from the garage or from Rod? Either the question wasn't asked or it was asked and he said no and that wasn't put into the affidavit, which would be a whole other issue as to, you know, leaving things out, important information that was not included. So yes, Scove, no, there's no dispute over that. He was seen to have dropped something on the ground that later was determined to be a small amount of methamphetamine, but I don't think it would be out of the ordinary for methamphetamine users to walk around going in and out of places, houses, businesses, whatever, with a small amount of methamphetamine in their pocket. So there's no real connection established between drugs or garage. The Sixth Circuit has a very well-reasoned case, I think, that addresses this issue. It's U.S. versus Brown, and I cite a lot of it in my brief, and basically they conclude that, look, just because somebody's a drug dealer, that doesn't, and you know where they live, you need to have some sort of information presented to the magistrate to establish that drugs are there, either an informant was in the residence and bought drugs or saw drugs, or we've been undertaking extensive surveillance and we see a lot of in-and-out activity that seems abnormal, you know, that sort of thing. I'm not sure, frankly, this Circuit, what the official position is. I know there's the Pruitt case that was really not, I don't think this issue was directly raised, it was a Leon good faith case, but in the Pruitt case, this court said, we have not established a per se rule that a person being a drug dealer, therefore, creates probable cause to search their residence, if we know where they live. So there's no per se rule. There are some circuits in state courts that are on both sides of the issue, and currently there's a case out of the Seventh Circuit where on a petition for writ of certiorari, and it may even, I think it stands a good chance of being heard by the Supreme Court on that very issue, it's United States versus Zamudio. And so I believe the Sixth Circuit's analysis of that to be true to the Fourth Amendment and reasonable and logical. The court basically says, look, if you're going to get a search warrant to search a residence, we're not going to allow that on vague and generalized facts. They have to be specific and concrete facts. And really what we have here is vague and general facts. So even if we look at, it was Burke was saying Rod was her supplier, right? Her source? Or is it the other way around? It was, well, it's a little more removed than that. At the very beginning, Utley was contacted. Utley said, yes, I'm delivering methamphetamine for Burke. And Burke's source is Rod, who lives in a garage. And so that was how Rod came onto the radar screen of the officer. All of this happened within about a two or three hour time period on April 2nd. Well, isn't that pretty good information about Rod being a drug dealer and that he lives in the trailer? You're just saying there's no evidence that he was selling it out of there? Is that the point? Well, I'm saying, Utley's not shown to be a reliable informant. So that's a significant part of the... What does Utley, putting aside whether he's reliable or not, he got his meth from Burke, correct? He said he just got some. So then where's the connection then? And Burke got it from Rod? That's what Utley said. And Burke was at, or at least Burke's car was at that garage? Is that sort of the loop there in getting and connecting the meth to that garage? Correct. But so the probable cause, the allegations are, get the drugs from Burke. Burke gets the drugs from Rod. Rod lives in a garage. Burke's car is parked out in front of the garage. And that's neither sufficient confirmation of the informant's information to prove that it's reliable, nor  Right. That's where I'm at so far. And first of all, the informant wasn't shown to be reliable. Well, isn't it kind of reliable if he said he lives in a garage, Burke sources Rod, and then Burke's car is parked in front of that garage? Well, let's assume he is reliable. Then all you've proven is that someone who's a drug dealer lives there. True. What we're saying, what I think the law is, is that that's not enough. You cannot, in this circuit, nor in the Sixth Circuit and several other circuits, magistrate cannot issue a search warrant for a residence just because law enforcement presents evidence that a drug dealer lives there. That's all. What case says that in the Eighth Circuit? The Eighth Circuit, the Pruitt case says, in the context of a Leon good faith analysis, that we have not established a per se rule that because someone's a drug dealer, that establishes enough probable cause to search their residence. All right. So we haven't established a per se rule. We haven't said it's not enough. We haven't said that a magistrate judge can't infer that drug dealers typically keep drugs at their residences. No, you haven't said that, but I don't think you should say that. And even if you wanted to say that, that a magistrate could infer that drug dealers typically keep drugs at their residence, that's not in this affidavit. This affidavit does not say, I'm an officer with 10 years experience, I know what drug dealers do, I know where they keep their drugs, and they typically keep them in their residence. This affidavit doesn't even say that. So it's very vague, generalized, and it's basically making the point that, hey, we found out that this guy's the supplier. He lives in a garage. Somebody left the garage and dropped what was later determined to be a small amount of methamphetamine. Why doesn't that help? You say, well, the guy could have been carrying it around because he's a meth user, but we don't have to take the inference in the light most favorable to the defendant. We could say, well, why couldn't the magistrate judge say, combined with the other information from Utley, that tends to support an inference that the drugs are in the garage? Because the affidavit directly states that he said that he didn't know anything about methamphetamine in the garage. Who said that? Scove. Well, he didn't say that. He said he didn't know how much, which is a different story than saying, as far as I know, there may or may not be meth in that garage. I don't know. Well, what does it mean then? It doesn't mean yes or no either way. Well, but you don't, we don't know the context. We don't know how the questions came up, and that's a problem. But the kind of, you know, I don't know how much is a different answer than, I don't know if there's any drugs there. It gives you no information. You would expect, as I said earlier, that if I'm a magistrate reading this affidavit, well, what did he say? Did the officer ask him, did you get these drugs in this garage? I'm sure, I would assume that was asked. We don't have the answer in the affidavit. But again, it's, the law says search warrants of residences aren't to be issued on vague and generalized information, and that's vague. And this was a search for a resident, right? Even though they called it a garage. Well, that's point number two, or issue number two, which is the motorhome issue. Which is, if the magistrate issued a warrant for a residence, why wouldn't that permit the officers to search the entire garage and the motorhome in it as well as just part of the residence? Well, first of all, the warrant wasn't issued for a residence. The word residence was not used in the language of what the search warrant was for. It was the word garage. And yet, the described for the magistrate was that the garage was used as a residence. He was living there. Right, and I think that a reasonable person would have different ideas as to what level of privacy expectation there would be for someone living in a garage as compared to somebody living within a motorhome within a garage. Because a garage is a garage. It's a space where you park vehicles, you store things. A motorhome has kitchen, bathroom, bedroom, storage areas, much more privacy involved. It's more, it is a residence in a way. It's a residence on wheels, but many people immobilize them, as was the case here. And they use it for a real residence. So that's the distinction. Beyond that, I mean, the best analogy I can give is in my town anyway, we have a lot of old houses that when they get run down, rather than people moving into them and living in them, some investor buys it and breaks it down into three or four apartments. But it still looks like a house from the outside. If an officer got a warrant to search the house, and they got inside and saw that there are multiple apartments, would they be able to go into each and every apartment? Your time has expired. Thank you for your argument. Ms. Fullerton, we'll hear from you. May it please the court, counsel. I'm Sarah Fullerton. I'm an AUSA in the District of Nebraska, and I was trial counsel on this case. With respect to the April 2nd search warrant, there was more in that affidavit than just a statement that somebody was a drug dealer. Investigator Gratz knew from prior experience with the defendant that the defendant had admitted a year and a half, a couple of years prior to being a drug dealer. And he was selling to people that worked at his tree service business. In fact, he had contacted him initially as a roost with respect to the tree service business. So he was aware that Mr. Mazula ran this business. In addition to that, he had the information from Mr. Utley, which was that he was buying methamphetamine from Shondell Burke. Shondell Burke was selling methamphetamine for Rod, who was her source, and that both of them were living in this garage. What about the part that, wasn't that the subject of the district court's analysis in removing where Burke lived? Wasn't that the controversy in the motion, whether or not the officer had given simultaneous descriptions that were different as to where Burke lived? And so the district court- Yes, Your Honor, with respect to the second search warrant, with respect to the April 22nd one. At the time of the April 2nd one, the first one, the information that Gratz had was from Utley, who said that Burke and Mazula were living in that garage. Now in the interim between the April 2nd warrant and the April 22nd warrant, he learned by contact with Ms. Burke that she was in fact living at an address on South 10th Street. And so when he did the second warrant, apparently he kind of cut and pasted the information from the first affidavit with regard to the information he had prior to the April 2nd warrant. But then he added to that and he included in that affidavit the fact that Burke was actually living on South 10th. He was not claiming in that April 22nd affidavit that Burke was living in that garage at that time. I don't know if that helps. I just thought there was concern about two different statements about where she was living and whether that was deliberately false and that the district court was not going to consider that information in analyzing the warrant. But maybe that was for the second warrant? That would have been for the second warrant. Because there wasn't any reference to South 10th or anything at the time of the April 2nd warrant because that didn't happen until later. Investigator Gratz didn't find Shondell Burke at the South 10th residence until I think earlier in the day on April 22nd or the day prior. He located her there. She had methamphetamine. She told him she had gotten it from Rod and that Rod, she had been to the shop earlier that day and had seen a large quantity of methamphetamine in his shop. So it's the second warrant where you have those two different references to where she was living. He included the information he had up to the point where the April 2nd warrant was issued and then he added information that he had obtained subsequent to that prior to the April 22nd one, which included the fact she was actually living at least as of April 21st or April 22nd, she was living on South 10th Street. Does that answer your question? Thank you. At any rate, with respect to the April 2nd one, he had information that there, that Utley's source, Burke, was living at this garage along with her source, Rod. Utley told Gratz that Burke was driving a red Lincoln. Surveillance was done on the garage. They saw a red Lincoln or something that matched the general description of the car that Utley had given parked outside. And then Richard Scove leaves that garage on a bicycle and he's found with a quantity of methamphetamine. So under all those circumstances, there's sufficient probable cause to believe that there's a quantity of methamphetamine in that building and there's more evidence there than just the fact that somebody has said that Rod is a drug dealer. But they're really, with the exception of the fellow driving away on his, riding away on his bicycle with methamphetamine, there's no one who has seen the drugs there or who has said they purchased from there? Is that correct? That's correct. That's correct. But there's no requirement that that be the case for probable cause. There's no requirement to get probable cause to search a residence or any sort of property that somebody has said they bought from there. Right. I guess I'm trying to get at the nexus and sort of figuring out, if you don't have someone seeing it and you don't have a purchase and what you have is someone just saying that these two folks sell methamphetamine and they live there and then you've got the bicyclist. What else have you got for nexus to that location as to where they would have been storing or there would have been stored methamphetamine? Well, I think it's implicit that a person who is in the business of distributing methamphetamine is probably going to keep that somewhere close to them. That's not always true. But I think it's certainly a reasonable assumption. And I don't know of any requirement that says you have to have somebody say they actually bought from a place in order to establish the nexus for probable cause. I think when you have somebody who says, these people are dealing methamphetamine, they're living in this garage and then you see somebody leave that garage who has methamphetamine on them in the middle of the night. Is that your strongest nexus then? I believe so. The bicyclist driving away with the small amount? Yes. And when he's asked, as Judge Erickson said, when he's asked how much methamphetamine is in there, he doesn't say, I don't know. He doesn't say, I didn't see any. He says, I don't know. He doesn't say that I don't know if there's any methamphetamine in there. He says, I don't know how much there is. He doesn't say, I didn't see any. He doesn't say, I didn't buy it there. He doesn't say any of those things. He simply says, I don't know when asked how much is there. So yeah, that's our strongest nexus there. You know, opposing counsel said, you know, that this affidavit doesn't include any of the things that we ordinarily see in affidavits that I've been an investigator for 10 years. And I'm aware in the past that Mr. Mazzullo was delivering relatively large quantities of methamphetamines. And my experience is that people who deal in large quantities of methamphetamines try to keep the drugs and the cash and the guns close to them. And they're most commonly found in close proximity to the dealer because the dealer needs ready access to all three in order to transact the business, blah, blah. And we see those all the time. None of that's here. Does that make any difference? I don't believe so because I think, quite frankly, any judge who sees that sort of language sees that as a boilerplate that appears in, as you said, lots of similar search warrant affidavits. I don't think you ever see an officer put in their boilerplate that I don't know where people keep their methamphetamine and I have no opinion on that. It always says essentially the same thing. I suspect that an issuing magistrate who sees these on a daily basis really doesn't pay a whole lot of attention to that language. Would it have been better if it had been there? Sure. Does it make any difference to this court's determination as to whether there was a probable cause? I don't think so because that particular language in and of itself I don't think would have made any difference to the issuing magistrate. Was this a search warrant for a garage or a residence? Well, it was a search warrant for a garage which was reportedly being used as a residence. And when the officers went into that particular garage, and I don't know if the court has seen the photos, but the garage had this camper trailer was in it along with a number of other items and there was a living type area in the main part of the garage itself which had a couch, some chairs, table. There was a stove area with pots and pans on it. There was a TV in one area, the radio. And the camper itself when the officers went in it was basically cluttered up with stuff. I mean, it was not apparent to the officers that somebody was specifically living in that camper any more than they were living in the whole garage. I think that's right. I mean, I've got the pictures right here and I'm looking at it. But here's my question is that if that's the case, why in the world were we dancing around in the world of the automobile exception, right? Rather than saying this is a residence and they knew it was a residence. He said, search the garage. The warrant said you could search the garage and it was clear the garage was in fact being used as a residence in the affidavit. But instead, there seems to be a huge emphasis on trying to say, well, could that thing be rendered mobile in a very short order and we're going to get to the automobile exception because we don't want to deal with does the search of the garage cover a vehicle inside the garage? When it struck me that if you look at the pictures, that's not really the dance that we were brung to. Well, and I think that's kind of a rabbit hole that we all ran down in terms of if you've read the transcript of the motion to suppress hearing was the defendant spent a great deal of time talking about how he would go about hooking up or unhooking up the trailer. And so we kind of went down that rabbit hole along with the fact that there frankly just wasn't a whole lot of case law out there that was anywhere near on point with this particular situation. Yeah, the naughty reported cases out there all would deal with the car that's parked in there that's looking car-like inside a garage. And I get where you start saying, well, now if it didn't say you can search the vehicles inside the garage, you have the debate, well, does the automobile exception apply? But in this case, it looked like you were looking at a residence and this whole thing is just trash. So stuff is flying all over the place. It looks like it's all tied together. And it strikes me that, like I said, the more I looked at the photographs and read the briefs, I couldn't figure out why we were talking about the automobile exception. I looked at the transcript and I saw it was in there, but I kept thinking, why? Was there any evidence to counter the idea that he was living in the garage as a building? Like you've described sort of, there's the RV in the middle. And I think if I remember the pictures correctly, there is furniture and other household type items around. Did the defendant contest that he was living in the garage portion? I think he tried to say he and his girlfriend were living just in the camper, but that only came from the defendant. What would have appeared to the officers in terms of whether or not they would have thought, which what I think is important, is whether the officers in looking at this situation would have thought that that was a separate residence that they needed to get a separate search warrant for. There is absolutely nothing in those photos that would suggest that they were wrong in assuming that people were living in that whole garage. So other than what the defendant said, no, there wasn't any evidence of that. And if there are no other questions, I'll sit down. Very well. Thank you for your argument. The case is submitted and the court will file an opinion in due course. Counsel are excused. If you're okay, then proceed to the next one.